UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TARIQ WYATT,** | : |
| Plaintiff | : CIVIL ACTION NO. 1:22-cv-414 |
| v. | : (JUDGE MANNION) |
| **BERNADETTE MASON,** Superintendent SCI-Mahoney; **L. CRONAUER,** DSFM Deputy Superintendent SCI-Mahoney; John Wetzel, Secretary Pennsylvania Department of Corrections; George Little, Secretary Pennsylvania Department of Corrections | : |
| Defendants | : |

## MEMORANDUM

Plaintiff Tariq Wyatt is confined at the State Correctional Institute at Benner Township, (Doc. 51), and was previously confined at SCI-Mahoney. (Doc. 37). In his Second Amended Complaint, (Doc. 37) (the "Complaint"), Plaintiff claims that Defendants Mason, Cronauer, Wetzel, and Little, who are officials of the Pennsylvania Department of Corrections (DOC), deprived him of the rights guaranteed by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Defendants move to dismiss the Complaint for failure to state a claim. (Doc. 40).

I.  BACKGROUND

For purposes of this motion to dismiss, the Complaint's factual allegations are accepted as true. *See Bruni v. City of Pittsburgh*, 824 F.3d 353, 360 (3d Cir. 2016). The court may also rely on exhibits attached to the Complaint. *Id.*

In May 2019, Defendant Cronauer issued a memorandum titled "Violence Reduction Strategy" (VRS) to DOC inmates. (Doc. 37 ¶7; Doc. 37.1). The VRS memo states that the DOC would be "applying response strategies for specific violent acts." (Doc. 37-1). It listed several "prohibited violent acts" and certain "privilege restrictions" that could be applied for these acts. (Id.). As relevant here, it also provided that "[t]he enhanced response strategies do permit locking the unit(s) down for up to a 36-hour period where the perpetrator of the act is housed." (Id.).

These 36-hour lockdowns "are continuing and systematic, and have occurred numerous times, more than 20 times, throughout the Pennsylvania state prisons." (Doc. 37 ¶7). "[D]ue to being punished by VRS for others' actions," Plaintiff has experienced negative psychological effects, including "pent up rage." (Id. ¶9). He resides in a residential treatment unit for inmates with mental illnesses and has "begged and pleaded with staff on numerous occasions to cease punishing him for others' actions." (Id. ¶10). He "does not

respond well, mentally, to being punished for actions he did not commit," and such punishment is "deteriotative to his mental stability." (Id.). Plaintiff has not committed a violent act during his incarceration. (Id. ¶11).

As to Defendants' personal involvement, the Complaint alleges that Defendant Cronauer sent the memo, Defendant Mason has "stated that she stands by the VRS" and "has answered a grievance appeal stating that she will continue to enforce the policy," and because DOC enacted the policy, Defendants Wetzel and Little were involved, too. (Id. ¶13).

Plaintiff requests that this case be certified a class action, as he alleges actions that affected all inmates confined in Pennsylvania state prisons. (Id. at 5). He seeks injunctive and declaratory relief, damages, and costs. (Id. ¶¶18–24).

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). So a complaint that contains only "labels

and conclusions," or a "formulaic recitation of the elements of a cause of action" does not comply with Rule 8. *Id.*

A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Facial plausibility is achieved "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility does not require probability but "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "merely consistent with" liability do not satisfy this standard. *Id.*

As noted above, the court at this stage accepts the complaint's factual allegations as true. But this tenet "is inapplicable to legal conclusions." *Id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). And "[d]etermining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

The federal pleading standard just described requires that district courts "conduct a two-part analysis." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to show such an entitlement with its facts.

*Fowler*, 570 F.3d at 210–11 (internal citations and quotations omitted).

*Pro se* filings such as Plaintiff's must be construed "liberally." *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). That means that the court should "remain flexible," and "apply the relevant legal principle even when the complaint has failed to name it." *Id.* It does not mean, however, that *pro se* litigants may "flout procedural rules—they must abide by the same rules that apply to all other litigants." *Id.* So "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

### III. DISCUSSION

42 U.S.C. §1983 "provides a cause of action to any individual who has been deprived of his rights under the Constitution or other federal laws by a

person acting under color of law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015). Petitioner here brings claims under the Fifth, Eighth, and Fourteenth Amendments. (Doc. 37 at 10).

To the extent Plaintiff brings these claims against Defendants in their official capacities, (Doc. 37 at 2), those claims fail. That is because "a suit against a state official in his or her official capacity … is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). And "neither a State nor its officials acting in their official capacities are 'persons' under §1983." *Id.* Plus, the Commonwealth is immune from suit in federal court under the Eleventh Amendment, *Lavia v. Pa. Dep't Corr.*, 224 F.3d 190, 195 (3d Cir. 2000), and has not waived this immunity. 42 Pa. Cons. Stat. §8521(b).

### A. Fifth Amendment

Plaintiff appears to claim that Defendants deprived him of liberty in violation of the Fifth Amendment's Due Process Clause. (Doc. 1 ¶16). But "the Fifth Amendment restricts the actions of federal officials, not state actors." *Highhouse v. Wayne Highlands Sch. Dist.*, 205 F. Supp. 3d 639, 648 (M.D. Pa. 2016) (citing *Nguyen v. U.S. Catholic Conf.*, 719 F.2d 52, 54 (3d Cir. 1983)); *Caldwell v. Beard*, 324 Fed. App'x 186, 189 (3d Cir. 2009) (non-precedential); *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008).

Because Plaintiff sues only state officials, he has stated no Fifth Amendment claim.

### B. Eighth Amendment

The Eighth Amendment protects against the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. It is "made applicable to the States by the Fourteenth." *Estell v. Gamble*, 429 U.S. 97, 101 (1976).

Though "[t]he Constitution does not mandate comfortable prisons," it does impose a duty on prison officials to "provide humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Officials "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of inmates." *Id.* But "not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 259 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Id.* (quoting *Whitley*, 475 U.S. at 319). "Among 'unnecessary and wanton' inflictions of pain are those that are totally without penological justification." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).

A "two-prong test" governs "whether prison officials have violated the Eighth Amendment":

> (1) the deprivation must be "objectively serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities"; and
> (2) the prison official must have been deliberately indifferent to inmate health or safety.

*Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020).

An objectively serious deprivation is created by "conditions posing a substantial risk of serious harm." *Porter*, 974 F.3d at 441. And "deliberate indifference" requires that the defendant "acted or failed to act despite having knowledge that her actions or inaction … would subject the inmate to a substantial risk of serious harm." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015) (quoting *Farmer*, 511 U.S. at 834).

Plaintiff contends that the lockdowns imposed pursuant to the VRS policy constitute cruel and unusual punishment. (Doc. 37 ¶7; Doc. 42 ¶¶2–3). He takes particular issue with the notion that lockdowns punish all inmates for the conduct of few, and thus "serve[] no penological purpose." (Doc. 37 ¶7; Doc. 42 ¶4).

While lockdowns extending for a long period of time may rise to the level of a constitutional violation, *see Delaney v. DeTella*, 256 F.3d 679, 681–82, 684 (7th Cir. 2001) (six-month lockdown), courts in our circuit have

generally deemed short-term lockdowns constitutionally permissible. *See, e.g.*, *Saunders v. Hill*, 2019 WL 5558961, at *3 (E.D. Pa. 2019) (ten-day lockdown); *Wivell v. Adams Cnty. Adult Corr. Facility*, No. 07-1193, 2007 WL 2155726, at *2 (M.D. Pa. July 25, 2007) (one-week lockdown); *Liles v. Camden Cnty. Dep't Corr.*, 225 F. Supp. 2d 450, 461 (D. N.J. 2002) (twenty-one day lockdown); *Ebersole v. Wagner*, No. 99-4526, 1999 WL 1241079, at *1 (E.D. Pa. 1999) (holding that six-day lockdown following an escape fell "within the expected perimeters of the sentence imposed" on the plaintiff (quoting *Sandin v. Conner*, 515 U.S. 472, 485 (1995)).

Initially, the court notes that Plaintiff's Complaint does not make clear what duration of lockdowns he was personally subject to. It generally alleges that the lockdowns "occurred numerous times, more than 20 times, *throughout the Pennsylvania state prisons*." (Doc. 37 ¶7) (emphasis added). Construing the Complaint liberally, the court assumes that lockdowns were imposed on Plaintiff's unit at SCI-Mahoney Township.

The court next addresses Plaintiff's argument that the lockdowns constituted cruel and unusual punishment because they served "no penological purpose except to punish innocent inmates." (Doc. 42 ¶4). But Plaintiff acknowledges that the lockdowns are imposed in response to the violent actions of inmates. (Doc. 37 ¶7). So they serve the legitimate

- 9 -

penological purpose of deterring violence in the prison.[1] Simply because the lockdowns may not have been imposed to punish Plaintiff specifically does not mean that they serve no penological purpose.

The court does not find that the multiple 36-hour lockdowns alleged here transgress the Eighth Amendment's bounds. They served a penological purpose and were not of a duration rising to the level of cruel and unusual punishment. There is no allegation of circumstances accompanying these lockdowns which plausibly constitute the denial of the minimal civilized measure of life's necessities.

The court next considers Plaintiff's allegations regarding his mental health treatment. He alleges that he "begged and pleaded with staff" to end the lockdowns, "spoke to psych staff on numerous occasions," and "all staff know full well that Plaintiff does not respond well, mentally, to being punished for actions he did not commit, and that this is deteriorating his mental stability." (Doc. 37 ¶10).

The allegations that Plaintiff "does not respond well, mentally" to the lockdowns and that they "deteriorate[] his mental stability" do not state an *objectively* serious deprivation. Descriptions of the effect of lockdowns on

---

[1] The court accepts as true Plaintiff's allegation that, pursuant to the VRS policy, the lockdowns were imposed as punishment and "not for security reasons." (Doc. 37 ¶7).

Plaintiff fail to plausibly show that the lockdowns amounted to conditions posing a substantial risk of serious harm. Nor do his generalized allegations that he "begged and pleaded with staff" or that "all staff knew" of these effects show that any of the Defendants themselves were deliberately indifferent to his health; that is, that they failed to act despite knowledge that doing so would subject Plaintiff to a substantial risk of serious harm.

The court therefore concludes that Plaintiff has failed to state an Eighth Amendment §1983 claim.

### C. Fourteenth Amendment

The Fourteenth Amendment's Due Process Clause has "both substantive and procedural components." *Evans v. Sec'y Pa. Dep't Corr.*, 645 F.3d 650, 658 (3d Cir. 2011).

### 1. Substantive due process

According to the "more-specific provision rule" Plaintiff may not challenge the same conduct under the substantive component of the Due Process Clause as he challenges under the Eighth Amendment. *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 261 (3d Cir. 2010). And his claim, which relates to his "conditions of confinement," "fit[s]s squarely within the Eighth Amendment's prohibition on cruel and unusual punishment." *Id.* So his substantive due process claim will be dismissed.

### 2. Procedural due process

A §1983 procedural due process claim requires a plaintiff to allege that: (1) "he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006). "[I]n the conditions of confinement context," the liberty interest must be "substantial": "the right alleged must confer freedom from restraint which imposes *atypical and significant* hardship on the inmate in relation to the ordinary incidents of prison life." *Williams v. Sec'y Pa. Dep't Corr.*, 848 F.3d 549, 559 (3d Cir. 2017) (internal quotations omitted). A two-factory inquiry informs whether conditions impose "atypical and significant hardship": "(1) the duration of the challenged conditions; and (2) whether the conditions overall imposed a significant hardship in relation to the ordinary incidents of prison life." *Id.* (citing *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000)).

Plaintiff has not alleged conditions imposing an atypical and significant hardship. First, the Complaint does not allege the duration of lockdown which Plaintiff himself experienced. Second, it does not allege lockdown conditions amounting to a significant hardship in relation to the ordinary incidents of prison life.

Typical short-term lockdown conditions have been deemed not to impose atypical and significant hardship. *See Ebersole*, 1999 WL 1241079, at *1; *Saunders*, 2019 WL 5558961, at *4; *see also Sandin*, 515 U.S. at 486–87 (prisoner's disciplinary placement in single-person cell, segregated housing "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest").

Even assuming that Plaintiff himself was subject to more than twenty 36-hour lockdowns between May 2019 (when the VRS memo was sent) and March 2022 (when the original complaint was filed), the court cannot conclude that his situation is atypical in the prison context. Though numerous, the short-term nature of these lockdown minimizes their harmful effect. And there is nothing in the Complaint to indicate that the lockdown conditions at SCI-Mahoney created significant hardship relative to the ordinary incidents of prison life. *Cf. Diaz v. Canino*, 502 Fed. App'x 214, 218 (3d Cir. 2012) (non-precedential) ("The Complaint simply does not provide any basis by which to compare [a state prison's Restrictive Housing Unit's] conditions with non-RHU custody. Accordingly, we hold that the District Court correctly determined that no protected liberty interest was affected by Diaz's 360-day confinement in RHU.").

The court thus concludes that Plaintiff has stated no §1983 Fourteenth Amendment Due Process claim.

### D. Class Action

Because the court concludes that Plaintiff has failed to state a claim himself, it need not pass on his request to certify a class.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss will be granted. Because Plaintiff has already been given leave to amend his complaint, his Second Amended Complaint will be dismissed without further leave to amend.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: July 29, 2024**
22-414-01